THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL O'DONNELL, Defendant-Appellant.

First District (1st Division)   No. 1—87—3737

Opinion filed December 18, 1989.

Randolph N. Stone, Public Defender, of Chicago (Jeffrey M. Howard, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, David Butzen, and Dominick T. Dimaggio, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant Daniel O'Donnell was convicted of residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3(a)), after a bench trial. O'Donnell appeals, arguing that his waiver of a jury trial was not made knowingly or understandingly. For the reasons below, we affirm.

On May 11, 1987, Chicago police officers Raymond Bell and Thomas Puzinski answered a burglar alarm at the home of Ms. Susan Mauro. At Ms. Mauro's residence, Officer Bell walked to the back of the house and noticed the back door ajar with signs of forced entry. Returning to the front of the house, Officer Bell saw someone leaving the house through the bathroom window, carrying a pink-colored sack.

Officer Bell chased the suspect down a gangway toward an alley, where the suspect dropped the sack. The officers radioed for assistance, and the suspect was caught. Throughout the entire chase, Offi-

cer Bell had not lost sight of the suspect.

The suspect was identified as the defendant, Daniel O'Donnell, also known as Harold Sonnenberg, William T. Boley, and John Fleming. The police recovered the pink sack, which was a pillow case containing a clock, several screwdrivers, jewelry, a cosmetic kit, and a pair of gloves. O'Donnell was charged with residential burglary.

Before trial, O'Donnell waived his right to a jury trial in the following colloquy:

> "DEFENSE COUNSEL: Mr. O'Donnell is present in open court, your honor. At this time, he's executing a jury waiver.
>
> THE COURT: Mr. O'Donnell, do you understand that under the Constitution, you are entitled to a trial by jury?
>
> DEFENDANT: Yes, your Honor.
>
> THE COURT: Now, a jury trial would involve selecting 12 people from our community. We have about 50 or 60 people in here and we'd talk to them find out things about them, and your lawyer would participate and the State's Attorney would participate. Eventually, we would select 12 people to sit as a jury.
>
> Those 12 people would hear the evidence and the arguments of the lawyers. And I would give them very specific instructions as to what the law is that applies to your case.
>
> And in a jury trial, those 12 jurors would decide by unanimous vote, at some point, whether or not you are going to be found guilty or not guilty.
>
> Do you understand what a jury trial is?
>
> DEFENDANT: Yes, your Honor.
>
> THE COURT: When you signed [the waiver] did you understand, you were saying, I Dan O'Donnell, want to give up my right to a jury trial? Is that what you want to do?
>
> DEFENDANT: Yes, your honor."

At trial, the police officers testified to the events leading to O'Donnell's arrest. Ms. Mauro identified as her property the pink pillow case and its contents, except for the screwdrivers and gloves.

O'Donnell testified that he had run from the police because he had just bought some drugs in the neighborhood and thought the police were making a drug raid. O'Donnell denied carrying anything during the chase. The prosecution impeached O'Donnell with evidence of two prior convictions for burglary. The trial court found O'Donnell guilty of residential burglary and sentenced him to eight years' imprisonment.

O'Donnell argues that the trial court's explanations concerning a

jury trial were insufficient to allow an informed waiver because the trial court failed to explain the consequences of a non-unanimous verdict. O'Donnell urges that a trial court must inform a defendant that if just one juror votes contrary to the majority to deadlock or "hang" the jury, a new trial will be held if the State chooses to exercise that option. Although O'Donnell raises an issue of first impression, his argument is without merit.

O'Donnell contends that although the issue of informed waiver was not preserved, it affected his substantial rights and should be reviewed under the doctrine of clear error. But the facts show that this was not a close case. The police responded to a burglary in progress, saw signs of forced entry at the victim's house, and saw O'Donnell leave the house with property that belonged to the victim. O'Donnell offered a different version of events, but was properly impeached. The record offers not a scintilla of doubt that the prosecution's witnesses were credible. O'Donnell does not question the sufficiency or reliability of any of the evidence, nor does he suggest that the evidence was presented in any prejudicial way. The reliability of the evidence and its presentation cast grave doubt on whether a jury could reasonably have returned a verdict of not guilty. Given the overwhelming evidence, an uninformed waiver of a jury trial would not have constituted prejudicial error. O'Donnell's argument does not meet the requirements for review under the doctrine of plain error.

Even were the court to consider the merits of O'Donnell's argument, he cannot prevail. O'Donnell concedes that the trial court's procedure in obtaining the waiver was correct so far as it went, but argues that it did not go far enough. O'Donnell contends that once the trial court explained the need for a unanimous jury verdict, it was required to explain the results of a hung jury. No contention such as O'Donnell's has been addressed in any jurisdiction, but it is without merit.

The historical basis for the jury trial lies in the desire to protect the individual defendant against abuses of power by the State. Thus the right to a jury trial protects the right to have an authentic representation of the community ascertain the relevant facts and pass on the ultimate question of guilt or innocence. (See *Spaziano v. Florida* (1984), 468 U.S. 447, 482-83, 82 L. Ed. 2d 340, 367, 104 S. Ct. 3154, 3174 (Stevens, J., dissenting).) The sixth amendment guarantees the defendant's right to a trial by jury, but does not include the right to a unanimous verdict. (*Apodaca v. Oregon* (1972), 406 U.S. 404, 32 L. Ed. 2d 184, 92 S. Ct. 1628.) Therefore, discussion of the effect of a non-unanimous verdict, where such is required for a guilty verdict,

does not implicate the sixth amendment right to a jury trial.

██ Discussions of non-unanimous verdicts may affect choices of trial strategy, however, which is more properly the province of defense counsel. The trial court may provide the information, since it takes little time to impart and may greatly benefit the defendant, but the court is not obligated to discuss non-unanimous verdicts to enable the defendant to intelligently waive his sixth amendment right to a jury trial. Where a defendant is informed of his right to a trial by a jury that will determine his guilt or innocence, and of his ability to participate in selecting the jury, he has the minimum information necessary to exercise that right or waive it, because that is what the right encompasses.

Here, O'Donnell was an "experienced" defendant who signed a waiver of a trial by jury in open court, after the court explained that in a trial by jury, both O'Donnell's attorney and the State's Attorney would participate in selection of the jury from members of the community. O'Donnell received, and indicated that he understood, the information necessary to intelligently waive his right to a jury trial. No further information was constitutionally required from the trial court, under the circumstances of this case, to enable O'Donnell to execute an informed waiver of his right to a jury trial.

In summary, the issue O'Donnell raised was not preserved for appeal, and given the reliability and the overwhelming nature of the evidence of his guilt, O'Donnell cannot rely on the plain error doctrine to seek review. O'Donnell could not prevail on the merits of his appeal in any event. He received the information necessary to make an informed waiver of his right to a jury trial, and no discussion of the effects of non-unanimous verdicts was necessary. Accordingly, we affirm O'Donnell's conviction.

Affirmed.

MANNING, P.J., and BUCKLEY, J., concur.